**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| ANNA MARIE DUPATY AND THOMAS DUPATY, JR., | § § § | |
| Plaintiffs, | § § | |
| | § | Civil Action No. 4:20-cv-1364 |
| v. | § | |
| | § | With Jury Demand Endorsed |
| ONPATH FEDERAL CREDIT UNION fka ASI FEDERAL CREDIT UNION, | § § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs Anna Marie Dupaty and Thomas Dupaty, Jr. ("Plaintiffs"), by and through counsel, for their Complaint against Defendant OnPath Federal Credit Union fka ASI Federal Credit Union ("ASI," "OnPath," or "Defendant"), state as follows:

### I. INTRODUCTION

1.      Defendant engaged in willful, malicious, coercive, deceptive and harassing actions against Plaintiffs in furtherance of Defendant's efforts to illegally collect from Plaintiffs, *in personam*, a debt they did not owe, as the debt had been discharged as to their personal liability in their bankruptcy case.  Defendant took actions to collect the debt from Plaintiffs by reporting false, derogatory and defamatory information about the status of the subject discharged debts and the accounts to be reported on Plaintiffs' consumer credit reports, and then refused to correct such false and illegal credit reporting, knowing the debts had been discharged and even after Anna Dupaty had disputed it with Equifax and Experian credit bureaus.

2.      Upon notice of the Chapter 13 filing, Defendant intentionally failed to update its reporting of the accounts to show their inclusion in the Chapter 13 Bankruptcy.  Nor did it update its reporting to the CRAs after it began receiving payments from the Chapter 13 Trustee or after it had pulled Plaintiff Anna Dupaty's credit report at least twice during the bankruptcy.  After the debts were discharged, Defendant finally updated its reporting but did so with false and defamatory information.  These acts were intentional and designed to keep false and harmful information on Anna Dupaty's credit report to deceive her into believing she was liable to pay the discharged debt and to coerce her into paying it.  Defendant's actions and inactions were taken for illegal collection purposes, to pressure and coerce payment from Plaintiffs in violation of federal, Texas state and common laws.

3.      Plaintiffs claim Defendant violated: 1) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq.*, (known as the Fair Credit Reporting Act, "FCRA"); 2) Tex. Fin. Code § 392.001 *et seq.*, known as the Texas Debt Collection Act ("TDCA"); and 3) the discharge injunction of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.  Plaintiffs also bring a defamation and declaratory judgment action and seek to recover from Defendant actual, statutory, and punitive damages, and legal fees and expenses.

## II. PARTIES

4.      Plaintiffs are natural persons residing in Tarrant County, Texas, and they are "consumers," as defined by the FCRA, 15 U.S.C. § 1681a(c), and the TDCA, Tex. Fin. Code § 392.001(1).

5.      Defendant is a Federal Savings Bank that may be served by delivering a summons to its CEO, Jared Freeman, 5508 Citrus Boulevard, Harahan, Louisiana 70123.

6.      Defendant is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b); and a "creditor," "debt collector," and/or "third-party debt collector" under the TDCA, Tex. Fin. Code §§ 392.001(3), (6) and (7).

7.      The debt at issue that Defendant was attempting to collect from Plaintiffs was a "consumer debt," as defined by Tex. Fin. Code § 392.001(2).

8.      Defendant is a furnisher of consumer credit information to national consumer reporting agencies Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and Experian Information Solutions, LLC ("Experian") (collectively the "CRAs"), as defined by 12 CFR 1022.41(c) and as described throughout the Fair Credit Reporting Act ("FCRA"), as Defendant regularly reports consumer account information to the CRAs for inclusion in consumer credit reports.

## III. JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334, and 1367; 28 U.S.C. §§ 2201-2202 and 15 U.S.C. § 1681p.

10.     Venue is proper in this district because Defendant transacts business in this district, Plaintiffs' bankruptcy was filed in this District and some of the conduct complained of occurred in this District.

## IV. FACTUAL ALLEGATIONS

### A.      The Subject Debt Was Included in Plaintiffs' Bankruptcy Case.

11.     On May 1, 2015, Plaintiffs filed a Chapter 13 bankruptcy in case number 15-41722-mxm13 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Bankruptcy Court"), and listed Defendant ASI on Schedule "F" as an unsecured creditor with two separate accounts, one ending in 1864 for a credit card and one ending in 0145 for a personal loan (the "Accounts").

12.     A true and correct copy of relevant portions of Plaintiffs' Schedule "F" is attached hereto as Exhibit "A."

13.     On May 1, 2015, Plaintiffs also filed with the Bankruptcy Court their **DEBTOR'S(S') CHAPTER 13 PLAN AND MOTION FOR VALUATION**, identifying, in **Section "J.   UNSECURED CREDITORS"** the two ASI Accounts.  Defendant did not object to Plaintiffs' Chapter 13 Plan.

14.     A true and correct redacted copy of Plaintiffs' confirmed Chapter 13 Plan is attached hereto as Exhibit "B."

15.     On or about May 6, 2015, the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice"), twice to ASI's designated email address.  The 341 Notice warned all creditors, in conspicuous language, against violating the automatic stay imposed by 11 U.S.C. § 362.  The email provider did not return the 341 Notice sent to Defendant, creating a presumption it was received.

**B.     Defendant Began Falsely Updating Plaintiff Anna Dupaty's Credit Reports.**

16.     According to Thomas Dupaty's May 18, 2016 TransUnion credit report, on April 30, 2016, ASI reported its account number 575828*** to TransUnion on Thomas Dupaty, Jr.'s consumer report that the status of that account was "Account Included Bankruptcy" and "Balance $0," acknowledging it knew how to properly report the Accounts to the CRAs.

17.     A true and correct redacted copy of relevant portions of Thomas Dupaty's May 18, 2016 TransUnion credit report are attached hereto as Exhibit "C."

18.     According to Anna Dupaty's May 18, 2016 TransUnion credit report, on April 30, 2016, ASI misreported its account number 433821201007*** to TransUnion to be reported on Anna Dupaty's consumer report, that the status of that Account was "Account 120 Days Past Due Date," with "Maximum Delinquency of 120 days in 04/2016 for $2,353" and "Balance $9,069,"

even though the Account had been included in Plaintiffs' bankruptcy as of May 1, 2015 and any default cured as a matter of law.

19.     A true and correct redacted copy of relevant portions of Plaintiff Anna Dupaty's May 18, 2016 TransUnion credit report is attached hereto as Exhibit "D."

20.     According to Anna Dupaty's May 18, 2016 Experian Report, ASI reported in April 2016 on its account number 4338212011007*** to Experian on Anna Dupaty's credit report as "Status Open. $2,353 past due as of Apr 2016" and "Recent balance $9,069 as of Apr 2016," but failed to disclose that said account was included in bankruptcy.   Such reporting was a misrepresentation since the filing of Chapter 13 Bankruptcy cured any default.

21.     A true and correct redacted copy of relevant portions of Plaintiff Anna Dupaty's May 18, 2016 Experian credit report is attached hereto as Exhibit "E."

22.     On December 31, 2018, Defendant accessed Plaintiff Anna Dupaty's credit report with Experian.  As a result, Defendant was on notice once again of its material misreporting of the Accounts and had a duty to correct such erroneous and defamatory reporting on Plaintiffs' consumer reports to the CRAs.

23.     A true and correct copy of relevant portions of Plaintiff Anna Dupaty's October 1, 2020 Experian Consumer report showing such credit pull is attached hereto as Exhibit "F."

24.     On November 22, 2019, ASI Federal Credit Union changed its name to OnPath Federal Credit Union.

25.     A true and correct copy of a press release generated by OnPath is attached hereto as Exhibit "G."

26.     On December 30, 2019, Defendant accessed Plaintiff Anna Dupaty's credit report with Experian.  As a result, Defendant was made aware again of its misreporting of the Accounts by its concealment of the material fact that the debts were included in bankruptcy.  Defendant had

a clear duty to correct its erroneous and defamatory reporting of Plaintiffs' accounts to the CRAs but it failed to do so.  *See* Exhibit "F."

**C.      Plaintiffs Received a Discharge in Their Bankruptcy Case.**

27.      On or about May 5, 2020, the Plaintiffs' Chapter 13 Plan was completed, and the Bankruptcy Court signed an order granting Plaintiffs a discharge ("Discharge Order").

28.      A true and correct redacted copy of Plaintiffs' Discharge Order is attached hereto as Exhibit "H."

29.      At no time during the pendency of Plaintiffs' Bankruptcy Case did the Defendant or any other person or entity object to or dispute the details or completeness of the claims on the Accounts listed on Schedule "F" of Plaintiffs' Petition.

30.      At no time did the Defendant object to Plaintiffs' Chapter 13 Plan that was confirmed on July 30, 2015.

31.      At no time did Plaintiffs reaffirm the debt on the Accounts with any person or entity.

32.      At no time did the Bankruptcy Court declare the debts on the Accounts to be non-dischargeable.

**D.      After the Debts Were Discharged, Defendant Attempted to Collect the Debts from Them.**

33.      After the debt on the Accounts were discharged as to Plaintiffs' personal liability and the permanent discharge injunction was in effect, prohibiting all actions to collect on discharged debts from Plaintiffs, the Accounts should have been reported as closed, with a zero-balance, and discharged in bankruptcy.  Defendant, however, failed to do this, instead reported false, negative information about the status of the Accounts to the CRAs to be reported on Plaintiff Anna Dupaty's credit reports in order to coerce payment from her and her husband.

**1)      Defendant Furnished False, Misleading and Negative Information About the Discharged Debts to Equifax and Experian to be Reported on Plaintiffs' Credit Reports.**

34.      According to her June 8, 2020 Equifax consumer report, on May 26, 2020, Defendant updated Anna Dupaty's consumer report with Equifax misrepresenting that as to account number 433821201007*** the "Account Status Over 120 Days Past Due Date" and "Reported Balance $4,222," but failed to disclose that the debt has been discharged in bankruptcy.

35.      A true and correct redacted copy of relevant portions of Anna Dupaty's June 8, 2020 Equifax consumer report is attached hereto as Exhibit "I."

36.      According to Anna Dupaty's July 31, 2020 TransUnion consumer report, on July 26, 2020, Defendant updated Anna Dupaty's consumer report with TransUnion and misrepresented that as to account number 433821201007*** the "Pay Status: >Account 120 Days Past Due Date<" and "Balance: $4,067," but failed to disclose that the debt has been discharged in bankruptcy.

37.      A true and correct redacted copy of relevant portions of Anna Dupaty's July 31, 2020 TransUnion consumer report is attached hereto as Exhibit "J."

38.      According to Anna Dupaty's October 1, 2020 Experian Consumer Report, on September 25, 2020, Defendant updated Anna Dupaty's consumer report with Experian misrepresenting that as to account number 433821*** "Status Open. $4,067 past due as of Sep 2020" and failed to disclose that the debt has been discharged in bankruptcy.  *See* Exhibit "F."

**2)      Plaintiff Anna Dupaty Disputed Defendant's False Reporting and Defendant Refused to Update and Correct its False, Derogatory, and Defamatory Credit Reporting and Certified It Was Accurate, Even Though it Knew the Debt had Been Discharged in Plaintiffs' Bankruptcy.**

39.      On or about September 21, 2020, Plaintiff Anna Dupaty disputed the reporting of account number 433821201007*** to Equifax, TransUnion and Experian Credit Bureaus.

40.     On or about October 8, 2020, Plaintiff Anna Dupaty received a response to her dispute from Experian indicating Defendant had verified the information as correct.

41.     A true and correct redacted copy of the Experian dispute results are attached hereto as Exhibit "K."

42.     On or about October 20, 2020, Plaintiff Anna Dupaty received a response to her dispute from Equifax indicating Defendant had verified its previous reporting as correct.

43.     A true and correct redacted copy of the relevant portions of the Equifax dispute results are attached hereto as Exhibit "L."

44.     By October 21, 2020, TransUnion had not responded to Plaintiff's dispute; however, the TransUnion reporting was corrected.

45.     A true and correct redacted copy of relevant portions of Anna Dupaty's December 9, 2020 TransUnion consumer report is attached hereto as Exhibit "M."

46.     According to Anna Dupaty's December 9, 2020 Experian consumer report, on November 25, 2020, Defendant updated Anna Dupaty's consumer report with Experian misrepresenting that as to account number 433821*** "Status Open. $4,067 past due as of Nov 2020" and fails to disclose that the debt has been discharged in bankruptcy.

47.     A true and correct redacted copy of relevant portions of Anna Dupaty's December 9, 2020 Experian consumer report is attached hereto as Exhibit "N."

48.     According to Anna Dupaty's December 9, 2020 Equifax consumer report, on November 25, 2020, Defendant updated Anna Dupaty's consumer report with Equifax and misrepresented that as to account number 433821201007*** the "Account Status Over 120 Days Past Due" and "Reported Balance $4,067," but still fails to disclose that the debt has been discharged in bankruptcy.

49.     A true and correct redacted copy of relevant portions of Anna Dupaty's December 9, 2020 Equifax consumer report is attached hereto as Exhibit "O."

## V.  GROUNDS FOR RELIEF - COUNT I

### FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. §1681 *et seq.*)

50.     Plaintiffs repeat, re-allege, and incorporate by reference the foregoing paragraphs, as if fully rewritten here.

51.     Defendant's inaccurate and derogatory reporting to the CRAs at issue, its failure to update the reporting to Equifax and Experian with accurate information and its verification of the false information was a breach of its duties under the FCRA, 15 U.S.C. §1681s-2(b)(1), which provides that, after a creditor has received notice of a consumer's dispute regarding the completeness or accuracy of the information it has reported to a CRA, it must conduct an investigation and, if the information is inaccurate or incomplete, it must modify or delete the inaccurate or incomplete information and report such to all CRAs to which it reported such inaccurate or incomplete information.

52.     The FCRA imposes distinct duties on CRAs and furnishers of credit information to ensure accurate and complete credit reporting.  A primary purpose for the FCRA is to protect consumers against inaccurate and incomplete credit reporting.  Subsection 1681i(a)(2) requires that CRAs provide notice of a dispute to the corresponding furnisher within five business days of receiving the dispute from the consumer.

53.     Subsection 1681s-2(b) imposes four duties on furnishers of credit information after her receipt of notice from a CRA of a consumer dispute. Upon receiving notice from a CRA, a furnisher must: (1) conduct an investigation; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; and (4), if inaccurate or incomplete information is discovered, report this result to all [nationwide] consumer reporting agencies to

which the person furnishing the credit information previously furnished the information. 15 U.S.C. § 1681s-2(b). Defendant breached these duties.

54.     Plaintiffs believe that, after reasonable discovery in this case, they will be able to show Defendant intentionally and maliciously furnished false and inaccurate information to the CRAs to be reported on Anna Dupaty's credit reports in accordance with its policies, procedures and practices, as stated hereinabove and failed to update and correct this inaccurate reporting, when Defendant knew the debt on the Account was discharged and it could not legally attempt to collect the subject debt from Plaintiffs.

55.     Plaintiffs believe that, after reasonable discovery in this case, they will be able to show that, at all relevant times, Defendant knew, and continues to know, that a discharge order granted by a U.S. Bankruptcy Court means discharged debts are no longer collectible from discharged debtors, but Defendant has made a corporate decision to willfully and maliciously act contrary to this knowledge in its calculated decision to violate its duty and requirement to properly furnish accurate information to the CRAs and to update and correct any inaccurate information it has reported to them, in general, and with regard to the Accounts and Plaintiffs, in particular.

56.     Plaintiffs believe that, after reasonable discovery in this case, they will be able to show Defendant has a policy and procedure to refuse to properly investigate credit disputes and to refuse to furnish and update information it furnishes to the CRAs to be reported on credit reports of consumers like Plaintiffs, to show that discharged debts have been discharged in bankruptcy. The purpose of having this policy and procedure is to keep false, negative information on the credit reports of these consumers to incorrectly represent that discharged debts, on which Defendant is attempting to illegally collect, are still due and owing, or keep other negative inaccurate information being reported on tradelines for discharged debt on credit reports, all with the

intentional and malicious intent to illegally and deceptively collect on discharged debts and to harm discharged consumers.

57.     At all relevant times, Defendant has known that (1) once a debt is included in a Chapter 13 bankruptcy filing, all defaults are cured and must be reported to the CRAs as such and that (2) once a debt on an account is discharged in bankruptcy, there can be no balance owed on the account by the discharged debtor.  Nevertheless, Defendant still attempts to collect on them *in personam* by intentionally furnishing false, negative information to the CRAs to be reported on the discharged debtors' credit reports and/or failing to update this information to be accurate, all the while knowing discharged debt is legally not collectible.  Even if Defendant had a legal right to furnish information on accounts with discharged debt to the CRAs to be reported on consumers' credit reports, Defendant would still refuse to furnish the correct, current status of such discharged debts, since such actions would not further its chances of illegally collecting on the discharged debt.

58.     Plaintiffs believe that, after reasonable discovery in this case, they will be able to show Defendant promised through its subscriber agreements or contracts with the CRAs to properly furnish accurate information and correct any inaccurate information for accounts that have been discharged in bankruptcy; but Defendant has willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow these requirements and agreements, which has resulted in its intended consequences of false, negative information being reported on credit reports as to discharged debts, in furtherance of its attempts to collect the legally uncollectible debts, including, but not limited to, Plaintiff Anna Dupaty's credit reports and the Account at issue.

59.     Plaintiffs believe that, after reasonable discovery in this case, they will be able to show that Defendant has a policy to "park" false information on accounts with debts discharged in bankruptcy on the discharged debtors' consumer credit reports with at least one of the CRAs.  The

term "parking" is a term in the industry meaning keeping a false balance (or false account) or negative information on individuals' consumer credit reports so that the consumer will be forced to pay Defendant the discharged debt in order to qualify for a loan and obtain financing or refinancing, or to increase the consumer's credit rating from the artificially lowered credit score based on the inaccurate, negative information being reported, which directly resulted from the creditors' intentional and malicious conduct of reporting false information or not reporting correct information to the CRAs.

60.     In the context of "parking" an account, Defendant has a contractual duty, coupled with an obligation and duty under state and federal law, to accurately report information about the status of consumer accounts, but Defendant willfully and maliciously ignores its contractual duties and refuses to obey applicable law.

61.     Defendant knows that "parking" an incorrect balance on accounts whose underlying debts have been discharged in bankruptcy will lead to false and defamatory information being published every time a consumer's credit report is accessed and reviewed by a person or entity, such as Plaintiff Anna Dupaty's credit reports at issue, and this is the malicious and intentional design behind Defendant's actions at issue, with the goal to force discharged consumers, such as Plaintiffs, to pay discharged debts.

62.     Here, Plaintiff Anna Dupaty's credit reports have been accessed by third-parties numerous times since Defendant reported and failed to update the false, negative information it was reporting to the CRAs on the Accounts; therefore, the false information Defendant furnished on the Accounts have been published to numerous third-parties, which is what Defendant calculated and intended to happen.

63.     When a consumer who has discharged debt on an account pays the debt on such "parked" account, Defendant will claim that such payment was purely "voluntarily" or was to pay

off a "moral obligation."  Defendant, however, knows that by willfully and maliciously "parking" discharged debt on consumers' credit reports for accounts on whose debts Defendant is trying to collect, illegal payments can be extorted from this group of innocent and unassuming consumers, including Plaintiffs.

64.     At all relevant times, Defendant knew how to report to the CRAs that a debt was included in a chapter 13 bankruptcy and then discharged in bankruptcy resulting in a zero-balance owed. Such knowledge notwithstanding, Defendant has persisted in creating the erroneous perception that the Accounts remained open and that Plaintiffs have a legal obligation to repay the subject debt. A third party who obtains a copy of Plaintiff Anna Dupaty's credit reports reflecting this incorrect information may conclude that Plaintiffs are still liable for the subject discharged debt, either because: 1) Plaintiffs reaffirmed the subject debts in their bankruptcy case and then failed to pay it; 2) Defendant asserted a dischargeability complaint against Plaintiffs on the debts in her Bankruptcy Case and prevailed, and/or 3) the Bankruptcy Court held the debts were not discharged as to Plaintiffs' personal liability.

## VI.  GROUNDS FOR RELIEF- COUNT II

### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

65.     Plaintiffs repeat, re-allege, and incorporate by reference the foregoing paragraphs, as if fully rewritten here.

66.     Defendant has violated the Texas Finance Code in numerous ways, including, but not limited to, the following:

a)     Tex. Fin. Code § 392.301(a)(8) prohibits Defendant from taking an action prohibited by law; Defendant's actions against Plaintiffs, including the above-detailed improper and inaccurate credit reporting that violates the FCRA and Defendant's attempts to collect on the discharged debt on the Account, in violation of the discharge injunction, as detailed hereinbelow, also violated the TDCA; and

b) Tex. Fin. Code § 392.304(a)(8) prohibits misrepresenting the character, extent, or amount of Plaintiff's debt; Defendant's inaccurate, incomplete and misleading information regarding the Account which it furnished to the CRAs, and Defendant's failure to update and correct this inaccurate information it furnished to the CRAs, when such inaccurate information was being reported on Plaintiff Anna Dupaty's credit reports for Plaintiffs, Defendant and other third-parties to view; and Defendant's verifying of such false information with the CRAs after Plaintiff disputed the information, all show that Defendant made misrepresentations of the character, extent or amount of the subject debt, in violation of the TDCA.

67.     In furtherance of its efforts to illegally and deceptively collect on the Account, Defendant failed to accurately report and update the inaccurate, negative information it had reported to Equifax and Experian on the Account to be reported on Plaintiff Anna Dupaty's credit reports. After Plaintiffs received a discharge on the Account in their Bankruptcy Case, Defendant should have furnished accurate information about the status of the Accounts to the CRAs, that the Accounts were discharged in bankruptcy and there was a zero-balance.

68.     Under Tex. Fin. Code Ann. § 392.403, Defendant's actions make it liable for Plaintiffs' actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees. Also, Plaintiffs' injuries resulted from Defendant's malice, actual fraud, and/or willful and intentional misconduct, entitling Plaintiffs to recover punitive damages.

69.     Because of Defendant's conduct, Plaintiffs were forced to hire counsel to pursue this action, and Plaintiffs' recoverable damages include her reasonable attorney's fees incurred in prosecuting this claim.

### VII.  GROUNDS FOR RELIEF - COUNT III

### VIOLATION OF THE DISCHARGE INJUNCTION

70.     Plaintiffs repeat, re-allege, and incorporate by reference all of the preceding paragraphs, as if rewritten here in their entirety.

71.     At all material times, Defendant had actual knowledge of Plaintiffs' Bankruptcy Case and of the discharge of the debt on the Account.

72.     Post-discharge, Defendant attempted to collect from Plaintiffs personally on the Accounts and the discharged debts, as evidenced by Defendant's inaccurate and defamatory credit reporting.

73.     Defendant's actions were willful acts in furtherance of its efforts to collect the discharged debt from Plaintiffs, in violation of the discharge injunction imposed by 11 U.S.C. § 524(a).  Further, Defendant's acts were harassing attempts to coerce and deceive Plaintiffs to pay the discharged debt.  Defendant's failure to comply with the aforesaid laws, despite Defendant being on notice of Plaintiffs' Bankruptcy Case and discharge and the effect of Plaintiffs' discharge, illustrates Defendant's utter contempt for federal law and the discharge injunction.

74.     The actions of Defendant constitute harassment and coercive and/or deceptive actions taken to collect a discharged debt from Plaintiffs, in gross violation of the discharge injunction imposed by 11 U.S.C. § 524(a)(1)-(3).

75.     Defendant knowingly and willfully violated the orders and injunctions of the Bankruptcy Court issued in the Bankruptcy Case.  After this *prima facie* showing by Plaintiffs, the duty falls on Defendant to show, as its only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability.  Failing a showing by Defendant of its present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiffs must prevail on their claims, and Defendant must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court.  Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant.  Any allegation of a good faith exception should not be allowed.

76.     Specifically, Defendant violated that part of the Bankruptcy Court's Discharge Order issued pursuant to 11 U.S.C. § 524(a)(2) that "operates as an injunction against the

commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived….""

77.     Plaintiffs believe that, after reasonable discovery in this case, they will be able to show that despite Defendant's receiving dozens, if not hundreds, of account disputes regarding this type of false credit reporting, Defendant continues to report false, negative information to the CRAs on accounts included and/or discharged in bankruptcy, and it intentionally and knowingly has not corrected its policies of keeping false and damaging information from being reported and updated correctly on these consumers' credit reports, including, but not limited to Plaintiffs' credit reports at issue.

78.     There are no exceptions under 11 U.S.C. § 524, other provisions of the United States Bankruptcy Code, or other applicable law that would permit Defendant's conduct, which was in blatant disregard of the discharge injunction.

79.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint, none of which occurred here.  No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

80.     Also, there is no requirement of mitigation on the part of Plaintiffs that is relevant to Defendant's violations of the orders and injunctions of the Bankruptcy Court.  Any burdening of Plaintiffs with an obligation to police the misconduct of Defendant would be a complete derogation of the law.  It is well-settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for bearing the cost of compliance.  Any attempt by Defendant to mount such a defense in this proceeding would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court, which is

prohibited. Any such defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendant. No defense of failure to mitigate should be allowed.

81.     Plaintiffs have been injured and damaged by Defendant's actions, and Plaintiffs are entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendant's violations of 11 U.S.C. § 524 and pursuant to the Court's powers under 11 U.S.C. § 105.

## VIII.  GROUNDS FOR RELIEF – COUNT IV

### DEFAMATION

78.     Plaintiffs repeat, re-allege, and incorporate by reference all of the preceding paragraphs, as if rewritten here in their entirety.

79.     Defendant provided statements of fact, after the initial filing and post-discharge of the subject debts in Plaintiffs' Bankruptcy Case for the Account regarding Plaintiffs, their payment history, and the status of the Account to be published through Equifax and Experian.

80.     Defendant may be held liable for Equifax and Experian's republication of the false and defamatory statements because Defendant's actions created a reasonable risk that the defamatory matter would be communication to other parties by Equifax and Experian.

81.     The published statements expressly referred to Plaintiff Anna Dupaty, and by inference to her husband, and were false.

82.     The published statements were defamatory, as the false statements constituted an invasion of the Plaintiff Anna Dupaty's interests in her reputation and good name.

83.     The publication of such false statements of fact about Plaintiffs, their payment history, and the status of the Plaintiffs' credit card account was done with actual malice and/or willful intent to injure the Plaintiffs.

84.     Actual malice is defined as publishing a statement with knowledge of or reckless disregard for its falsity.

85.     Defendant acted with actual malice and/or willful intent to injure the Plaintiffs because it willfully provided for publication of false information regarding Plaintiffs, Mrs. Dupaty's payment history, and the status of Plaintiffs' credit card account with knowledge of the falsity of such information, having been informed of the truth by Plaintiff Anna Dupaty.

86.     Defendant's publication of the false information regarding Plaintiffs, her payment history, and the status of the discharged Account was also done with reckless disregard for the truth, which is demonstrated by Defendant's pattern of ignoring Plaintiff Anna Dupaty's dispute of such information as set forth above.

87.     Defendant's malice may be inferred from the fact that Defendant continually published false and misleading information regarding Plaintiff Anna Dupaty, her payment history, and the status of the Account during the bankruptcy and post-discharge to Equifax and Experian and by its failure to correct such statements after pulling Mrs. Dupaty's consumer reports and seeing its blatant failure to disclose that the Accounts were included in her Chapter 13 bankruptcy filing, thereby being specifically informed of the falsity of such information being disseminated to Plaintiff's creditors and the public.

88.     Defendant provided for publication the defamatory information both before and after notification of the falsity of such information by Plaintiff Anna Dupaty.  Additionally, each time the false statements were presented to a third party, in the form of credit inquiries, a new publication occurred.

89.     Plaintiffs have suffered actual damages, increased costs of credit, increased interest rates, attorney's fees and/or out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of Defendant's publication of defamatory statements.

90.     Plaintiffs are entitled to actual damages as a result of Defendant's publication of defamatory statements.

## IX.  GROUNDS FOR RELIEF – COUNT V
### REQUEST FOR DECLARATORY RELIEF

91.     The allegations in all of the paragraphs set forth above are re-alleged and incorporated herein by this reference.

92.     As outlined in the preceding counts and the preceding factual allegations, the Defendant has violated the Bankruptcy Code.  Plaintiffs seek a declaration that Defendant's erroneous credit reporting at issue with Equifax and Experian concerning Plaintiffs' Bankruptcy Cause and the resulting discharge of the debt on the Account as to Plaintiffs' liability for the Account, violates the Bankruptcy Code, the Discharge Order, and the discharge injunction.

93.     Plaintiffs are entitled to attorneys' fees and costs pursuant to the Federal Declaratory Judgment Act.

## X.  RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

94.     After a reasonable time to conduct discovery in this case, Plaintiffs believe they will be able to show that all actions at issue were taken by employees, agents, servants, or representatives of any type for Defendant in the line and scope of such individuals' (or entities') empress or implied authority, through employment, agency, or representation, which imputes

liability on Defendant for all actions at issue under a theory of *respondeat superior* and/or vicarious liability.

## XI. DAMAGES

95.     In addition to any damages previously stated hereinabove, the conduct at issue of Defendant has proximately caused Plaintiffs credit denial, monetary loss; past and future mental distress; emotional anguish and a discernable injury to Plaintiffs' emotional states; harm and damage to Plaintiff Anna Dupaty's credit score, credit rating and credit reputation and resulting injuries; and other damages, evidence for all of which will be presented to the jury.  Moreover, dealing with the consequences of Defendant's actions has cost Plaintiffs time and mental energy, which are precious to them.  Additionally, Plaintiffs are in the process of trying to buy a new home and Defendant's misreporting of a past-due live balance that is claimed to be due, owing, and personally collectible will complicate the underwriting process, potentially cause a credit denial, and otherwise hinder Plaintiffs from enjoying the fresh start promised by Congress in the bankruptcy code.

96.     At all relevant times, Defendant knew, and it continues to know, that, pursuant to a bankruptcy automatic stay and a discharge order granted by a U.S. Bankruptcy Court, debts are no longer legally collectible, but Defendant made a corporate decision, knowingly, willfully, maliciously, and contrary to its knowledge of bankruptcy law, to attempt to collect on the debt it knew had been discharged as a result of Plaintiffs' Bankruptcy Case.

97.     Plaintiffs believe that, after reasonable discovery in this case, they will be able to show that all actions taken by, or on behalf of, Defendant were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiff, with the actual knowledge that such actions were in violation of the law.

98.     Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant's actions at issue are an integral part of Defendant's illegal design, implemented in its policies and procedures, to profit by harassing unsophisticated debtors and collecting debts that had been included and discharged in the debtors' respective bankruptcy cases.

99.     Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant has been involved in numerous disputes involving complaints about the type of conduct at issue here; nevertheless, Defendant, intentionally and knowingly, has refused to correct its policies and comply with applicable laws, of which laws Defendant is well aware.

100.    Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with its established policies and procedures, with respect to knowingly, willfully, intentionally, and maliciously attempting to collect on debts discharged in bankruptcy, including, but not limited to, accessing Plaintiff Anny Dupaty's credit reports, and reporting misleading information to the CRAs to be included in Plaintiff Anna Dupaty's credit reports regarding the Account in furtherance of Defendant's collection attempts.   Accordingly, Defendant is subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendant.  Moreover, Plaintiffs' injuries resulted from Defendant's malice, and/or willful and intentional misconduct, entitling Plaintiffs to punitive damages.

101.    Due to Defendant's conduct, Plaintiffs were forced to hire counsel, and their damages include reasonable attorney's fees incurred in prosecuting her claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Anna Marie Dupaty and Thomas Dupaty, Jr. pray the Court:

A.      Enter judgment in favor of Plaintiffs and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendant's violations of the FCRA, the TDCA and the bankruptcy discharge injunction,

B.      Find that appropriate circumstances exist for an award of punitive damages to Plaintiffs and injunctive relief to Plaintiffs and award these damages and relief to Plaintiffs as sought;

C.      Find that appropriate circumstances exist to render the declaratory relief sought by Plaintiffs and render and make such declaration as requested;

D.      Award Plaintiffs pre-judgment and post-judgment interest as allowed by law; and

E.      Grant such other and further relief, in law or equity, to which Plaintiffs might show they are justly entitled.

Respectfully submitted,

/s/ James J. Manchee
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com

MANCHEE & MANCHEE, PC
5048 Tennyson Parkway, Suite 250
Plano, Texas 75024
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFFS

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

December 23, 2020                    /s/ James J. Manchee
Date                                 James J. Manchee